IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA WRIGHT,

    *Plaintiff,*

    v.

STATE FARM INSURANCE, *et al.*,

    *Defendants.*

Civil Action No.: ELH-11-0066

## MEMORANDUM OPINION

This case arises from a dispute concerning a homeowner's insurance claim submitted by

Patricia Wright, plaintiff, after her home suffered substantial damage as a result of a fire.  Wright

filed suit in the Circuit Court for Baltimore City in June 2010 against her insurer, State Farm

Insurance ("State Farm"), alleging breach of contract.  *See* Compl. (ECF 2).  In December 2010,

Wright filed a First Amended Complaint in the circuit court, adding "M&T Bank" as a defendant

("M&T"),[1] and adding claims for conversion and negligence as to M&T.[2]  *See* First Am. Compl.

¶¶ 12-22.  Thereafter, on January 7, 2001, defendants jointly removed the case to federal court,

based on diversity jurisdiction.  *See* 28 U.S.C. §§ 1332, 1441, and 1446; Notice of Removal ¶ 1

(ECF1).[3]

---

[1] As Wright indicates, the full name of the bank is "Manufacturers and Traders Trust
Company."  *See* Second Am. Compl. ¶ 3 (ECF 29-2, Ex. 2).

[2] M&T moved to dismiss the counts of conversion and negligence for failure to state a
claim, but withdrew that motion on January 14, 2011.  *See* M&T Bank's Mot. Dismiss ¶ 1 (ECF
18); Withdrawal of M&T Bank's Motion to Dismiss (ECF 31).

[3] Wright is a resident of Maryland.  M&T is incorporated in New York, where it has its
principal place of business. State Farm is an Illinois corporation, and its principal office is
located there.  State Farm answered in September 2010.  In light of the Fourth Circuit's recent
opinion in *Barbour v. Int'l Union*, No. 08-1740, _____ F.3d _____, 2011 WL 242131 (4th Cir.
Jan. 27, 2011) (en banc), the removal appears to have been untimely.  The parties have not raised

On February 16, 2011, Wright filed an "Amended Motion for Leave to Amend and Motion to Remand to State Court" ("Wright's Motion," ECF 29), seeking leave to file a Second Amended Complaint that would add five new defendants: (1) L.A.W. Construction & Design, LLC ("L.A.W."); (2) Nation Star Mortgage Ctr, LLC ("Nation Star Ctr"); (3) Ionita M. Rutherford, the Managing Member of both L.A.W. and Nation Star Ctr; (4) Nationstar Mortgage, LLC ("Nationstar Mortgage"), Wright's mortgage lender; and (5) Gina Bowman, an employee of State Farm Insurance. Wright also seeks leave to add additional claims as to the new defendants. In her proposed Second Amended Complaint, Wright sets forth nine counts: (I) breach of contract as to L.A.W.; (II) fraud as to Rutherford, L.A.W. and Nation Star Ctr; (III) breach of contract as to State Farm; (IV) negligent mishandling of Check Three as to State Farm; (V) fraud as to State Farm and Bowman; (VI) negligent mishandling of a claim of forgery as to State Farm; (VII) negligence as to M&T; (VIII) conversion as to M&T; (IX) declaratory judgment to determine Nationstar Mortgage's entitlement to any proceeds recovered by Wright.

As noted, Wright has also asked the Court to remand the case to State court because, by adding three of the proposed defendants, the Court will lack diversity jurisdiction under 28 U.S.C. § 1332(a).[4] *See* Second Am. Compl. ¶ 5 (ECF 29-2, Ex. 2). M&T and State Farm filed separate responses, each advising that it does not object to Wright's Motion, including the remand. *See* M&T Bank's Response to Motion for Leave to Amend and Motion to Remand to State Court (ECF 32); State Farm's Response to Plaintiff's Motion for Leave to Amend and Remand to State Court (ECF 33).

---

the issue, however. Because I conclude that a remand to State court is appropriate, I need not address the removal issue.

[4] Specifically, Rutherford and Bowman reside in Maryland, and Nation Star Ctr is a Maryland Limited Liability Company, with its principal place of business in Baltimore City. *See* Second Am. Compl. ¶ 5, ¶ 8 (ECF 29-2, Ex. 2).

The Court has reviewed the parties' submissions, and no hearing is necessary to resolve this matter. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Court shall GRANT Wright's Motion.

## FACTUAL BACKGROUND

On or about July 8, 2004, Wright purchased a homeowner's insurance policy, Number 20-GK-4892 (the "Policy"), from State Farm Insurance, applicable to her primary residence, located at 35 Herrington Drive, Upper Marlboro, MD 20774 (the "Residence"). *See* Compl. ¶¶ 1, 2, Ex. 1. Nation Star Mortgage is the lien holder for the Residence. On or about July 14, 2009, Plaintiff's residence was severely damaged by fire. *Id.* ¶ 3. As a result, State Farm issued three checks to Wright. The first two checks, totaling approximately $10,000, represented payment for boarding up Wright's home and removing debris. The third check, in the sum of $311,343.38, was issued in payment for the cost of repairs. *Id.* ¶¶ 7, 9, 10.

The third check, dated October 22, 2009 (the "Settlement Check" or "Check Three"), was payable to the order of "L.A.W. CONSTRUCTION AND DESIGN & PATRICIA WRIGHT & NATIONSTAR MORTGAGE LLC ITS SUCCESSORS AND/OR ASSIGNS, 1520 HOLLIN ST. STE 100, BALTIMORE MD 21223." *Id.* ¶ 11, Ex. 2 (copy of the Settlement Check). It is this payment, in the sum of $311,343.38, that is in dispute.

Wright alleged in her complaint, as first amended, that although "State Farm issued the check in the amount agreed upon by the parties in settlement, no check or funds were ever received by Plaintiff for the rebuilding of 35 Herrington Drive pursuant to the settlement agreement." *Id.* ¶ 12. According to Wright, she never endorsed the Settlement Check, and her "signature was forged on the Settlement Check by a third party." First Am. Compl. ¶¶ 7, 8.

Wright alleged that the Settlement Check was presented to M&T, which honored the check, despite the forged signature. *Id.* ¶ 9.

In the proposed Second Amended Complaint, Wright seeks to add the following additional facts, uncovered during further investigation.

Nationstar Mortgage was the purchase money lender and is the current lien holder for the Residence. *Id.* ¶¶ 7, 24. Ms. Bowman is a Claim Representative at State Farm. *Id.* ¶ 8. After State Farm assessed the damage to the Residence and estimated the costs of rebuilding, Wright contracted with L.A.W., "though its Managing Member, Ionita M. Rutherford, to board-up, remove debris, and rebuild her residence." Second Am. Compl. ¶ 15. Rutherford was also the Managing Member of Nation Star Ctr. *Id.* ¶ 5. Wright avers, *inter alia*, that Rutherford created Nation Star Ctr "for the sole purpose of defrauding Plaintiff . . . and Nationstar Mortgage, LLC." *Id.* ¶ 6, 38.

Prior to issuing the Settlement Check, State Farm issued a check for $2,500 payable jointly to Wright and L.A.W. ("Check One") for the costs of boarding the Residence. State Farm provided Check One directly to Wright, who then endorsed Check One and delivered it to Rutherford. *Id.* ¶¶ 18, 19. However, M&T would not permit Rutherford to deposit the check until Wright verified her signature. *Id.* ¶ 20. Thus, "[a]t the request of M&T, Ms. Wright visited her local M&T branch where she regularly banked and was required to provide identification prior to the deposit of Check One by M&T." *Id.* ¶ 21.

State Farm also issued a check for $8,500, payable jointly to Wright, L.A.W., and Nationstar Mortgage ("Check Two"), for the cost of debris removal.[5] *Id.* ¶¶ 17, 23. According

---

[5] Wright explains that Nationstar Mortgage's signature was required on the Second Check, "given (i) its capacity as a loss payee, and (ii) the monetary amount pursuant to State Farm policy." Second Am. Compl. ¶ 24.

to Wright, State Farm gave Check Two directly to Rutherford, "for unexplained reasons." *Id.* ¶ 25. Upon Rutherford's request, Wright endorsed Check Two. *Id.* ¶ 26. Wright allegedly contacted Ms. Bowman, the State Farm representative handling her claim, to express concern that Check Two was provided directly to Rutherford, without Wright's consent. *Id.* ¶ 62. Rutherford delivered the check to Nationstar Mortgage for its endorsement. *Id.* ¶ 28.

Nationstar Mortgage's policy "was to deposit the check into its own account and re-issue a check to the contractor, L.A.W., once proper documentation was provided by L.A.W. of its entitlement to the funds (e.g. that L.A.W. has actually completed the debris removal)." *Id.* ¶ 29. Wright was not aware of this policy, nor was she aware that Rutherford failed to provide Nationstar Mortgage with the required documentation. *Id.* ¶¶ 29, 30. Nationstar Mortgage eventually returned Check Two to Wright "because L.A.W. never provided the requested documentation." *Id.* ¶ 31.

As noted, State Farm issued Check Three, i.e., the Settlement Check, on October 22, 2009, payable to L.A.W., Wright, and Nationstar Mortgage. *Id.* ¶ 34. Wright avers that, despite her previous discussions with State Farm, the insurer sent the Settlement Check directly to Rutherford and failed to notify Wright of the check's issuance. *Id.* ¶ 35. According to Wright, Rutherford "forged the endorsements of both Ms. Wright and Nationstar Mortgage on Check Three and presented Check Three for deposit" into an M&T account that she opened "in the name of Nation Star Mortgage Ctr, LLC." *Id.* ¶¶ 36, 37. Rutherford then contacted Wright, told Wright that "she needed to provide verification for another check," and asked "Wright to visit M&T, speak with a particular bank representative, and provide her identification." *Id.* ¶¶ 39, 40.

Wright provided her identification to the M&T representative, as directed by Rutherford. *Id.* ¶¶ 43, 44. In doing so, Wright believed that she was verifying her signature with respect to

Check Two. *Id.* ¶ 41. According to Wright, the M&T bank representative did not show Wright a copy of the Settlement Check for verification. *Id.* ¶ 45. Moreover, M&T deposited the Settlement Check into the Nation Star Ctr account established by Rutherford, despite "blatant disparities between the signatures on her identification and Check Three" and "blatant disparities between the payee name 'Nationstar Mortgage, LLC' and 'Nation Star Ctr, LLC,' . . . ." *Id.* ¶ 46, 47. Wright avers: "Upon information and belief, M&T deposited Check Three without the signature verification of Nationstar Mortgage, or any confirmation that Nationstar Mortgage was in any way related with Nation Star Ctr (they were not)." *Id.* ¶ 48.

In mid February 2010, subcontractors hired by L.A.W. informed Wright that L.A.W. had not paid them for the work they performed on the Residence. *Id.* ¶ 49. The subcontractors also told Wright that Rutherford had previously shown them a copy of the Settlement Check "to provide assurances of L.A.W.'s ability to pay." *Id.* ¶ 50. It was then that Wright learned that the Settlement Check had been issued by State Farm. *Id.* ¶ 51. Wright contacted Rutherford, who admitted that State Farm provided her with the Settlement Check. *Id.* ¶ 52. Wright immediately "put M&T on notice of Ms. Rutherford's forgery." She also contacted State Farm, which then "verified that Check Three was provided directly to Ms. Rutherford in October, 2009." *Id.* ¶¶ 53, 54.

Wright contends that, "after forging the endorsements and depositing Check Three with M&T, [Rutherford] failed to use the funds to rebuild Ms. Wright's property. . . ." *Id.* ¶ 56. Rather, Rutherford "used the funds for her own personal use." *Id.*

## DISCUSSION

United States District Courts obtain diversity jurisdiction where the action is between citizens of different states and the matter in controversy is greater than $75,000. 28 U.S.C. §

1332(a). Complete diversity is required; opposing parties may not share common citizenship. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).[6]

Wright seeks leave to amend to add additional defendants, additional factual averments, and additional claims, based on information obtained "[a]s a result of further factual investigation…." Plaintiffs may amend once as a matter of course within certain time boundaries. *See* Fed. R. Civ. P. 15(a)(1) (titled "Amending as a matter of course"). When, as here, the time to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999), the Fourth Circuit said: "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" (Quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

State Farm and M&T do not oppose Wright's request. However, if Wright is permitted to add the additional, nondiverse defendant, diversity would be destroyed, along with the Court's subject matter jurisdiction.

Section 1447(e) of Title 28 U.S.C. is relevant here. It provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joiner, or permit joinder and remand the action to the State court." The joinder decision "is committed to the sound discretion of the district court[.]" *Mayes,* 198 F.3d at 462. *See also C.I.N. Construction, LLC v. Hunt Construction Group, Inc.*, 2009 WL 2998965, at *12 (D.N.J. September 18, 2009) ("The permissive language of the statute

---

[6] The "fraudulent joinder doctrine," which permits a federal court to assume diversity jurisdiction, is not at issue here.

indicates that the decision [as to joinder] is entrusted to this Court's discretion."). But, as the Fourth Circuit explained in *Mayes,* 198 F.2d at 462, "the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case."

In exercising discretion under 28 U.S.C. § 1447(e) with respect to a motion to amend that would defeat diversity jurisdiction, several factors are relevant to the court's analysis. These include whether the purpose of the amendment is to defeat diversity jurisdiction, "'whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.'" *Mayes*, 198 F.3d at 462 (citation omitted); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

I have considered the requisite factors set forth above; they weigh heavily in Wright's favor. There is no claim that Wright's action is motivated by bad faith, with the intent to defeat federal jurisdiction, or that she has been dilatory. Rather, she seeks leave to amend based on the discovery of key additional facts. Moreover, both M&T and State Farm expressly consent to Plaintiff's Motion for Leave to Amend and Remand to State Court. Therefore, in accordance with Rule 15(a), *Edwards, Mayes,* and 28 U.S.C. § 1447(e), Wright's Motion is hereby GRANTED. The Court shall enter an Order consistent with this Memorandum Opinion.


Date: March 21, 2011                    _/s/_____
                                        Ellen Lipton Hollander
                                        United States District Judge